# COUNTY OF SAGADAHOC.

DAVID BROWN *& ux. versus* SOUTH KEN. AGRICULTURAL SOCIETY.

The South Kennebec Agricultural Society is an *aggregate* corporation, distinguishable from *quasi* corporations, in several essential particulars; and, like an individual, is responsible for injuries, resulting from a want of ordinary care and foresight; but the liability is corporate, to satisfy which only corporate property can be levied upon.

EXCEPTIONS from the ruling of CUTTING, J., and MOTION to set aside the verdict.

This was an ACTION ON THE CASE, brought by the plaintiffs to recover for damages alleged to have been sustained by the female plaintiff, by the giving way and falling of a portion of a building which was owned and used by the defendants, upon their fair grounds in Gardiner, on the 25th day of September, A. D., 1857.

The defendants admitted they were a corporation, duly organized under their charter.

They also admitted that the female plaintiff was injured

by the breaking down of the building erected by the defend-ants upon their grounds, at the time alleged in the writ, but denied that it was on account of any carelessness, neglect or fault of theirs, and contended that the injury was occasioned by unavoidable accident, for which they were in no way re-sponsible.

The plaintiffs contended that the accident and injury were caused by reason of the insufficiency and unsuitableness of the building, and of the materials used in its construction.

The testimony introduced at the trial was fully reported, as to the condition of the building, the manner in which it was built, and the character of the materials used in building it; of the nature and extent of the injuries sustained by the female plaintiff.

One of the grounds of defence, as set forth in the specifica-tion of defence filed, was, that neither of the plaintiffs was law-fully within the enclosure of the defendants, or upon their grounds, or within their building, not having paid the sum of money required for admission thereto.

Upon this point, David Brown, one of the plaintiffs, testifi-ed " that he purchased a family ticket before the fair, and, also, that he purchased of John Stone, who acted as ticket seller at the ticket office, three other tickets, for which he paid 75 cents. That these three last tickets were bought the last day, and admitted himself, wife and daughter on the day of the accident. That Stone was acting as treasurer of the society on that day."

*On cross-examination* he stated, that he " bought a member's, or family ticket, at his house in Richmond, for which he paid one dollar; that, at the time he purchased the three tickets of Stone, on the last day, for himself, wife and daughter, he had his family ticket in his pocket, but did not exhibit it eith-er to Mr. Stone or the gate keeper; that he and his wife and daughter all went in to the fair grounds on the morning of the 25th of September, by virtue of these tickets; all he did was to exhibit the tickets he purchased that day; that he and his wife went in and out two or three times that day, without

purchasing any other tickets; that there was a balloon ascension from the fair grounds on the said 25th of September; that, shortly after the fair, he called on the said John Stone and requested him to pay back to him the 75 cents, which he paid for the balloon ascension, and that said Stone did pay it back to him."

It was also in evidence, " that, on the day of the accident, there was a balloon ascension, and each person was charged twenty-five cents additional for a ticket to witness that exhibition."

The Judge was requested by the defendants' counsel to give the following instructions:—

1. That, in order to enable the plaintiffs to recover, they must prove the injury was occasioned solely by the gross carelessness or negligence of the defendants.

2. That if the falling of the building which caused the injury was occasioned by any hidden or latent defect in the timbers, unknown to the defendants, and which common care and prudence could not detect, the defendants are not liable.

3. That if the jury find that Mrs. Brown went in a second time under a twenty-five cent ticket, contrary to the regulations of the trustees, and was injured by the falling of the building, she cannot recover.

4. That, upon the facts proved in the case, the plaintiffs cannot maintain this action.

The first and fourth were not given, nor was the second in the language of the request.

But the Judge, among other things not excepted to, did instruct the jury that the defendants were only liable for the want of ordinary care; that, whether the defendants used ordinary care, prudence, skill and foresight in the erecting, maintaining and repairing said building, was a question for them to determine upon the testimony. That if 'they did exercise such care, the plaintiffs could not recover.

In connection with the third requested instruction which was given, the Judge told the jury, " that if Mrs. Brown was on the ground, and the society had a gate-keeper in charge,

they would be authorized to infer, unless controlled by the evidence, that she was rightfully there."

The verdict was for the plaintiffs.

To which rulings, instructions, and refusals to instruct, the defendants excepted.

*Clay*, in support of the exceptions, argued,—

That, upon the facts proved, this action cannot be maintained, and such should have been the ruling of the Judge presiding at the trial.

The Act incorporating the defendants does not confer upon the corporation the general powers, rights, duties and obligations of ordinary private corporations. The objects, duties, powers, rights and purposes are specified and defined in the Act. They are allowed to take and hold property, the income of which shall not exceed $3000 annually, to be applied to the advancement of agriculture, horticulture and the mechanic arts. It was not the intention to invest them with general powers incident to ordinary corporations, or impose upon them the general burdens and liabilities of private money corporations. The power to sue and be sued is incident to all corporations, and may be exercised, so far as is necessary to carry out the objects and intentions of the society, whether specially granted or not. 2 Kent's Com., 277; A. & A. on Corp., (3d ed.,) 19, 21, 32; *School Dist. in Rumford* v. *Wood*, 13 Mass., 193.

This power does not necessarily imply authority to maintain this action. The defendants are merely an association with a corporate capacity, for particular and specific ends, with the right to sue to enforce their contracts, and a liability to be sued for a violation of contracts and agreements made in pursuance of the authority conferred by their charter, and for no other purpose. Their rights, powers, &c., are similar to those of counties, towns, &c., usually called *quasi* corporations, against which no action will lie, unless expressly given by statute. *Russell* v. *The Men of Devon*, 2 Durn. & East, 667, 671; 2 Kent's Com., 278; A. & A. on Corp., 85, 566; *Hol-*

*man* v. *Townsend*, 13 Met., 297; *Hooper* v. *Emery*, 20 Maine, 246; see also, *Jackson* v. *Hartwell*, 8 Johns., 424.

How proper aggregate corporations are distinguished from *quasi* corporations, see *Riddle* v. *The Proprietors of Locks & Canals on Merrimack River*, 7 Mass., 169; *Adams* v. *Wiscasset Bank*, 1 Greenl., 361; *Foster* v. *Lane*, 10 N. H., 315; *Merchants' Bank* v. *Cook*, 4 Pick., 405.

This society is a corporation only in name. Its powers are exercised and held only for the public good. There are no private interests to be advanced. No one has any interest or right which he can sell or transfer. No dividends can be made, even if there is a surplus; all must be applied to the advancement of agriculture, &c., according to the terms of the charter. All the elements which go to make up a general body politic and ordinary corporation are wanting here.

It was only for the advancement of agriculture, &c., that this society was incorporated. For no other purpose could they organize or take and hold property; for no other object could they assess members or collect funds. R. S., c. 58, § 17. On the day of the accident there was a balloon ascension from the fair grounds. The exhibition of stock, agricultural products and implements, &c., was on the first and second days; on the third the member's ticket was to be given up, and, for the exhibition on the last day, a sum additional was charged. The plaintiffs were then admitted "by virtue of the tickets purchased on the last day, not for the purpose of attending the cattle show or fair, or any exhibition connected with, or belonging to, "agriculture, horticulture or the mechanic arts." The ticket was purchased to witness the balloon ascension, and nothing else; an object in no way connected with any object for which the society was organized. No liability attaches to the society, as a corporation, for any injury occasioned under such circumstances, whether the officers sanctioned such an exhibition or not, for, in so doing, they exceeded their authority. *Thayer* v. *Boston*, 19 Pick., 511; *Mitchell* v. *Rockland*, 41 Maine, 363; *State* v. *Great Works Mill Co.*, 20 Maine, 41.

Neither can a corporation subsequently ratify acts of its agents, which it could not have directly authorized them to do. *Hodges* v. *The City of Buffalo,* 2 Denio, 110.

The *third* requested instruction should have been given without any qualification. The plaintiffs were not lawfully there, because they were not there " in conformity with the regulations of the officers of the society." R. S., c. 58, § 17; and were liable to the penalty provided for in such case by 18th section of the same chapter.

*Tallman & Larrabee, contra.*

The opinion of the Court was drawn up by

CUTTING, J.—By a special law of 1853, c. 165, § § 1, 2, certain individuals, their associates, successors and assigns, were created a corporation by the name of the South Kennebec Agricultural Society, with power by that name to sue and be sued, use a common seal, make by-laws for the management of their affairs, not repugnant to the laws of the State, and to hold and exercise all the powers incident to similar corporations. And to take and hold property, real and personal, to an amount the income of which shall not exceed three thousand dollars, to be applied to the advancement of agriculture, horticulture and mechanic arts.

Under this statute the defendants were duly organized and subsequently erected a building seventy-two feet long, thirty-five feet wide and two stories high, in which to hold their annual fairs. And it appeared in evidence, *that,* on Sept. 25, 1857, while a fair was being held, the female plaintiff being in the lower story, the flooring above gave way and was precipitated upon her, causing a serious and permanent injury. And the jury, under the instructions of the Judge at *Nisi Prius,* in matters of law, having found that the injury was occasioned through the want of ordinary care on the part of the defendants in erecting, maintaining and repairing the building, returned their verdict in favor of the plaintiffs, and assessed damages in the sum of one thousand dollars. Upon

the evidence produced at the trial, the Judge was requested to instruct the jury that the plaintiffs could not maintain their action, which was declined, thus raising the question whether the defendants are by law responsible for injuries so occasioned.

If a natural person, on his own private account, had thus erected a building wherein to exhibit the productions of nature or art, and an injury had thus been sustained, the common law would have afforded an ample remedy. But it is here contended, that the defendants are a *quasi* corporation, or *quasi* as to liabilities; that, in the erection of the building, they were not in the execution of a power conferred or a duty enjoined by statute, and, consequently, no action lies against them, either at common law or by force of any statute. To sustain this proposition, *Russell* v. *The men of Devon*, 2 T. R., 667, is cited as a leading case, where it is held that at common law a private action could not be sustained against a *quasi* corporation for neglect to perform a public duty. And this rule has been considered applicable, by a series of American decisions, to all *quasi* corporations, such as counties, towns, parishes, school districts and the like in New England. *Eastman* v. *Meredith*, 36 N. H., 284, where PERLEY, C. J., in a very able and learned opinion, classifies, and, to a certain extent, reconciles the various decisions involving that question.

But are the defendants such a corporation? In the case first cited, Lord KENYON, C. J., concludes his opinion by remarking—"I do not say that the inhabitants of a county or hundred may not be incorporated to some purposes; as if the king were to grant lands to them, rendering rent, like the grant to the good men of the town of Islington. But where an action is brought against a corporation for damages, those damages are not to be recovered against the corporators in their individual capacity, but out of their corporate estate; but, if the county is to be amerced as a corporation, there is no corporate fund out of which satisfaction is to be made." So, in *Adams* v. *Wiscasset Bank*, 1 Maine, 361, MELLEN, C.

J., says,—"No private action, unless given by statute, lies against *quasi* corporations for a breach of corporate duty, having no corporate fund, each inhabitant would be liable to satisfy the judgment."

*Again*, in *Biddle* v. *The Locks and Canals*, 7 Mass., 187, the Court say,—"we distinguish between proper aggregate corporations, and the inhabitants of any district, who are by statute invested with particular powers *without their consent.* These are in the books sometimes called *quasi* corporations; of this description are counties and hundreds in *England*; and counties, towns, &c., in this State. Although *quasi* corporations are liable to information or indictment, for a neglect of a public duty imposed on them by law, yet no private action can be sustained against them for a breach of their corporate duty, unless such action is given by statute. *And the reason is*, that, having no corporate fund, and no legal means of obtaining one, each corporator is liable to satisfy any judgment rendered against the corporation."

The foregoing extracts from the decisions of eminent jurists, show the origin, elements, definition and immunities of *quasi* corporations, the mere limbs of the body politic, and absolutely necessary as subordinate members of the State. But the defendants are not such a corporation; the distinguishing characteristics are as follows, viz. : —

*First.* They were invested with particular powers, not without, but with their consent and on their application.

*Second.* They are not territorial; a voluntary subscription only entitles them to membership.

*Third.* They are authorized to hold a corporate fund, viz. : real and personal estate, limited only by the annual income; and, although the income is specifically appropriated, yet the capital is not, but may be subject to attachment and execution.

*Fourth.* The action must be brought against the corporation, *eo nomine*, and not against the corporators.

*Fifth.* The members in their individual capacity are not responsible.

*Sixth.* They are not intrusted with any of the ordinary attributes of sovereignty for the purpose of local government.

But, if the defendants cannot *draw* the sword, they can, when drawn and beat into a plowshare, *exhibit* it as a specimen of the mechanic arts. They are not a *quasi,* but an *aggregate* corporation, which, as defined, consists of several persons, united in one society, continued by a succession of members, and, being the mere creature of the law, possesses only those properties conferred by charter either expressly, or as *incidental to its existence, and best calculated to effect the object of its creation.* Ang. & Am. on Cor., § § 3, 29. And even the defendants' charter confers on them all the powers *incident* to similar corporations. But they cannot exercise any powers without the necessary facilities; and, hence, the necessity of a suitable building for the reception and exhibition of such articles as may be presented and duly entered. And a building cannot be declared *suitable,* unless it be *safe* for all persons who are permitted to enter. In the construction of such an edifice the law imposes ordinary care, which the jury have found the defendants failed to exercise; and that finding we cannot disturb without making aggregate corporations less responsible than individuals under like circumstances, which would be an act of judicial legislation.

The other rulings we find to be conformable to law; and the verdict sustained by the evidence.

*Exceptions and motion overruled.*

*Judgment on the verdict.*

TENNEY, C. J., and RICE, APPLETON, MAY and GOODENOW, JJ., concurred.