## THE AGRICULTURAL AND MECHANICAL ASSO-
## CIATION OF WASHINGTON COUNTY,
## MARYLAND, A Corporation, *vs.*
## LOUIS F. GRAY.

*Fair associations: liability for safety of grounds; not inde-*
*pendent contractors; injury to visitors; breaking of*
*railing; contributory negligence. Evidence:*
*condition of locality; examination a*
*month after event.*

In general evidence of the condition of a locality, subsequent
to an accident or injury for which an action is brought, is
not admissible; the test of admissibility is whether the facts
it is proposed to offer, are relevant.                    p. 603

The iron railing at a county fair gave way, and a visitor at the
fair, with others of a crowd, leaning against the rails to
watch the races, fell some distance and was injured; in an
action against the Fair Association for damages, *it was held
that*: the evidence of a witness as to the method of construc-
tion of the rail, and the way it was braced, was admissible,
although his examination of the rail was not made until a
month after the accident.                                p. 603

In an action for damages for personal injuries received by the
plaintiff from the alleged negligence of the defendant, the
statement of the plaintiff as to his condition and feeling are
legally admissible; their probative value is for the jury.
                                                          p. 604

Contributory negligence as a matter of law is not to be attrib-
uted to the party injured merely because of his presence at a
place provided for him and to which he has been invited by
the defendant.                                           p. 605

The theory of "independent contractor," will not free a County
Fair Association from liability for the breaking of a railing
upon the grounds, by reason of which visitors are injured.
                                                          p. 605

Persons erecting and maintaining a place of public exhibition
must use reasonable care in its construction, maintenance

and management with regard to the character of exhibitions given therein and the customary conduct of spectators who witnessed them.	pp. 606, 607

*Decided November 15th, 1912.*

Appeal from the Circuit Court for Washington County (KEEDY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Henry H. Keedy* and *J. Clarence Lane,* for the appellant.

*Frank G. Wagaman* (with *Wagaman and Wagaman* on the brief), for the appellee.

STOCKBRIGE, J., delivered the opinion of the Court.

The Hagerstown Fair is one of the events of the year in Western Maryland, attracting visitors from Washington and the adjacent counties.

Among those who flocked thither in October, 1911, was Louis F. Gray, who on Thursday, the 12th. of the month, betook himself to the fair grounds as he had been wont to do in each year since 1881, for the double purpose of recreation and education. To accommodate the crowds which were anticipated, the Agricultural and Mechanical Association which conducted the fair, had erected a grandstand some two hundred feet long and from a hundred to a hundred and fifty feet wide. In front of this stand, and between it and a track used for racing, was an open space to accommodate the bookmakers, those who desired to place bets on the races, those who could not find space in the grandstand, and those who wished to view the finish of the races at closer range. This open space was elevated some ten or twelve feet above the track, and a stone wall partly laid in cement and partly with loose stones retained the earth in place to the edge of the track. Along the top of this stone wall was a railing, made from iron piping, with upright posts at intervals into

which the horizontal piping was screwed by means of a thread cut in the pipe. The railing seems to have been intended for the two-fold purpose of preventing persons from falling down the ten feet onto the track, and also for persons to lean or rest upon while watching the finish of the races. The posts spoken of were set in holes drilled in the stone and secured in place by molten lead poured around them. There were also at intervals guy or stay rods from the rail, carried into the ground and supposed to be anchored there. The purpose of these guys or stays was to impart added strength to the rails.

On the Thursday afternoon before spoken of, the final race of the day was in progress. Gray, the plaintiff, had obtained a post of vantage next the rail to see the finish; an accident among the racers took place near the three-quarters pole, the crowd pressed forward to see what the trouble was, a portion of the rail gave way, and Gray was thrown to the track below, with some ten or a dozen others, and possibly with some of the others on top of him. On examination, Gray was found to have one, and perhaps two of his ribs broken, and a contused injury on his shoulder, internal rather than external in its nature, and this appears to have affected his nervous system. It is to recover for these injuries that this suit was brought.

Three bills of exception were taken in the progress of the trial, the first of which was with regard to the admission of certain evidence, and arose in this way: A witness by the name of Lowman, called by the plaintiff, testified that sometime in November, about one month after the fair, he had made an examination to see how the stay-rod was held in the ground, and was then asked the question, "State what examination you made of the place and what you found at the time in November?" This was objected to by the counsel for the defense, and when the objection was overruled, an exception was reserved. In support of the objection the case of the *Annapolis Gas Co.* v. *Fredericks,* 109 Md. 595 and in same case, 112 Md. 455, was relied upon, where it was said

that the "rule is well settled that evidence of a subsequent condition of the place where the accident occurred is not admissible to show a negligent condition at the time of the injury, because the question of negligence is to be determined by the actual condition at the time of the injury;" but in that same case it was also said, that there are certain well recognized qualifications and exceptions to this rule. The true test of whether such evidence is or is not admissible, does not depend so much upon the time of the examination, "but upon the relevancy of the facts testified to, to the issue, and their capability of explaining it. Any circumstances that may afford a fair and reasonable presumption of the fact to be tried are to be received and left to the consideration of the jury, who are to determine upon their precise force and effect and whether they are sufficiently satisfactory to warrant them in finding any of the facts in issue." *Brooks* v. *Winters,* 39 Md. 505; 29 Cyc. 614; *Refrigerating Co.* v. *Kreiner,* 109 Md. 361; *Huff* v. *Simmers,* 114 Md. 549; *Treusch* v. *Kamke,* 63 Md. 280; and the admissibility of evidence of this character is very fully considered in the case of the *Md. D. & V. R. Co.* v. *Brown,* 109. Md. 319, in which JUDGE PEARCE reviews many of the decisions, and cites and adopts the rule as laid down in 1 *Wigmore on Evidence,* sec. 437, wherein the author holds that in admitting or rejecting such evidence, much must be left to the discretion of the trial Court. Examination of the record in this case does not lead to the conclusion that the discretion of the trial Court in overruling the objection of the defendant and admitting the testimony was in any way abused, and therefore no reversible error was committed.

The second exception was to the overruling of a special exception presented by the defendant to the granting of the plaintiff's third prayer, or so much of it as permitted the jury to take into consideration whether the injuries to the plaintiff were permanent in their nature. The evidence as contained in the record going to the permanency of the injuries is as follows: the plaintiff himself testified "that he suf-

fered with his arm up until about Christmas; that it was very
bad and he had not much use of it, had no strength in it; that
there is a pole in the shop where they hang clothes, and it is
impossible for him to use his right arm to hang them up, a
pain strikes him in the arm and goes right back to his shoulder
blade, that continues to this time." This evidence was given
at the trial of the case on March 5th, 1912, or approximately
five months after the injury. Dr. Miller, who was called for
the plaintiff, testified to attending the plaintiff at the time of
the injury, and from that time till the 25th of November fol-
lowing; that the contused wound on the shoulder was not at
first discovered, because it did not show on the outside; that
there are nerves in that part and that the nerves were bruised
with the flesh. He further testified that at the time when he
ceased attending him, the plaintiff was cured as far as profes-
sional knowledge could cure him; that he is a natural invalid,
and therefore is not cured now. There is no contradiction of
the evidence that the plaintiff suffers and for a long time has
suffered from curvature of the spine, and he may possibly be
below the normal of strength; but the plaintiff was before the
jury, they could to some extent judge of his then condition,
and with the testimony in the case such as that mentioned, a
Court could not say as matter of law that there was no evi-
dence of permanent injury. What the probative value of the
evidence was was an entirely different question, one for the
jury, they could to some extent judge of his then condition,
part of the Court below in overruling this exception.

The third exception was reserved to the rulings of the trial
Court upon the prayers. So far as the fifth prayer of the
defendant is concerned, what has been said with regard to
the special exception of the defendant is equally applicable
here, and it follows that that prayer was properly rejected.

The second, fourth and sixth prayers of the defendant in
one form or another are all based upon the theory of con-
tributory negligence upon the part of the plaintiff, but the
record entirely fails to disclose any act of the plaintiff which
could be regarded as contributory negligence, unless it be

that at the time of the happening of this accident the plaintiff was in a place provided by the defendant for the witnessing of its races, and a Court will never predicate an instruction of contributory negligence because of the mere presence of an individual at a point provided for him and to which he has been invited by a defendant. In the form presented it was liable to mislead the jury, and create an impression in their minds that those erecting the rail were independent contractors, and that if the jury believed them so to be that the defendant was thereby absolved from responsibility. Such, of course, is not the law, as was expressly decided in *Smith* v. *Benick,* 87 Md. 610, and was probably not the intention of the defendant's counsel in the drawing of it, but as the prayer was susceptible of that interpretation it was properly refused.

The remaining prayers can properly be considered together. In such an action as this the basis of the right of a plaintiff to recover rests in some act or omission which constitutes negligence, and the main inquiry is whether the facts as testified to made out such a *prima facie* case as to give rise to a presumption of negligence, or to warrant a jury in drawing a conclusion of negligence. The defendant was conducting a fair and charging an admission fee, and was impliedly if not actively inviting the public to attend. It thereby assumed an obligation towards all who accepted that invitation. The facts testified to which tend to show negligent construction of the rail are as follows: a portion of the retaining wall was built up of loose stones, more liable to yield under pressure than a wall laid in cement; the post which broke out from the stone was one set in this loose stone wall, and the post itself was set down in the stone *but an inch and three-quarters.* The crowd which pressed up to the rail at the time of the accident was the usual crowd on such occasions, nothing more, as is testified to by three of the defendant's witnesses, Koontz, McCammon and Newcomer. Tending to negative any idea of negligence is the evidence of two men who repaired the rail and put in the guy rods,

and the testimony of some of the officers and directors of the defendant who made an inspection of the rail in question some three or four days before the accident, and found it apparently in safe condition. The defendant attempts to rely upon a number of cases of which the *South Baltimore Car Works* v. *Schaefer,* 96 Md. 88, in which the relation of master and servant was the controlling factor; *B. and O. R. R.* v. *Savington,* 71 Md. 590, where the deceased running by the side of a moving train stumbled and fell against the locomotive; *B. and O. R. R.* v. *Black,* 107 Md. 642, where the marks on the train were mute but compelling evidence of contributory negligence; *Arnold* v. *Green,* 95 Md. 217, of similar character, are examples. Their application to a case like the one now under consideration is remote. Closer in point and analogy is the case of *Fox* v. *Buffalo Park,* 47 N. Y. Supp. 788, where the stairway of a grandstand at a race track fell and injured the plaintiff, with regard to which the Court said: "It was the duty of the defendant to *know* that the structure was safe or at least exercise the highest degree of care to that end," and in a concurring opinion by WARD, J., he says: "The collapse of the structure was sufficient *prima facie* evidence of negligence." So in *Francis* v. *Cockrell,* L. R. 5 Q. B. 184, it was said of a building maintained for public exhibition purposes, that the proprietor "impliedly undertakes that due care has been exercised in its erection." In this case a grand stand erected for viewing a steeplechase fell and injurd a number of those on it, and in deciding it HANNEN, J., said, "the nearest analogy as to the measure of duty is that afforded by a carrier of passengers. The charging of admission carries with it an implied warranty that due care has been used by those employed to do the work and by the defendant himself." The case of *Schofield* v. *Wood,* 170 Mass. 415, bears a very close analogy to the case in hand. The language of the Court in defining the obligation was as follows: "A person erecting and maintaining a place of public exhibition must use reasonable care in the construction, maintenance and management of it having

regard to the character of exhibitions given therein and the customary conduct of spectators who witness them, and he can not escape liability if he is negligent in the manner in which the guard rail in front of the gallery was constructed and maintained, and if a spectator who was injured by the falling of a guard rail during an exhibition was in the exercise of due care, on the ground that other persons may have contributed to the injury."

In the large number of cases the term employed to designate the duty of the owner are "due care," "ordinary care" or "reasonable care." Thus this Court said in *Albert* v. *Ryan,* 66 Md. 337, "he who solicits and invites the public to his resorts, must have them in a reasonably safe condition and not in a condition to risk the lives and limbs of his visitors." See also 29 *Cyc.* 453; *Swords* v. *Edgar,* 59 N. Y. 28; *Thornton* v. *Agricultural Society,* 97 Me. 108; *Phillips* v. *Wis. State Agl. Soc.,* 60 Wis. 401; *Kann* v. *Meyer,* 88 Md. 551; *Texas State Fair* v. *Brittain,* 118 Fed. 713; *Marti* v. *Texas State Fair Assn.,* 69 S. W. 432; *Currier* v. *Boston Music Hall Asso.,* 135 Mass. 414; *Brown* v. *So. Kennebeck Agl. Soc.,* 47 Me. 275; 74 Am. Dec. 484; *Dunn* v. *Brown Co. Agl. Soc.,* 1 L. R. A. 754; *Williams* v. *Mineral Park Assn.,* 128 Iowa, 32. Yet in each one of the cases where the measure of care or duty is defined by the use of the adjectives, due, ordinary or reasonable, the application has been the same as in the cases of *Fox* v. *Buffalo Park* and *Schofield* v. *Wood, supra.*

The defendant's seventh prayer, which was granted thus correctly, define the measure of the duty of the defendant, and in no way conflicts with the second prayer of the plaintiff, and it was therefore left to the jury to say by their verdict whether the defendant had or had not been guilty of negligence in the construction of the rail.

In the view of this Court, the law of the case was fairly presented to the jury upon the facts testified to, and the judgment will accordingly be affirmed.

*Judgment affirmed, appellant to pay costs.*