THE NEW.THEATRE COMPANY, a Body Corporate,

*vs.*

LILLIAN V. HARTLOVE.

*Theatres and places of amusement : duty to public ; negligence ;*
*province of court and jury.*

Negligence is usually a question for the jury to decide under
all the facts of the case.                              pp. 86-87

Unless the uncontradicted evidence proves such a glaring act
of carelessness, on the part of the plaintiff, as to amount, in
law, to contributory negligence, it is the duty of the Court to
submit the question of contributory negligence to the jury.
                                              p. 87

The proprietor of a theater or other place of public amuse-
ment to which the public is invited and admission charged, is
under an obligation to use ordinary care and diligence to put
and keep the place in a reasonably safe condition for persons
attending, in pursuance of such invitation ; while not an insurer
of the safety of persons attending, he is bound to use ordinary
care for their safety and protection, and if an injury results
from a breach of this duty he is liable.                  p. 82

A company owning a vaudeville and moving picture theater
had removed the hand rail which had been between the row of
front seats and an orchestra pit sunk some 3 or 4 inches below
the level of the floor ; during a performance, while the lights
were turned down a patron of the theater, while being lead by
the defendant's agent to a seat, or while being allowed by them
herself to seek a seat in the front row, and while relying upon
the presence of such hand rail, to which she had been accus-
tomed, fell into the orchestra pit and injured her ankle. *Held,*
that under all the facts of the case there was presented a ques-
tion of negligence on the part of the defendant, proper to be
submitted to the jury.                                p. 86

In passing upon the ruling of the trial court upon a prayer of the defendant asking that the case be taken from the jury, the Court of Appeals will assume the truth of all the plaintiff's evidence.                                                          p. 86

*Decided March 19th, 1914.*

Appeal from the Superior Court of Baltimore City. (DAWKINS, J.)

The appellee sustained injuries to her ankle, by a fall while seeking a seat in a darkened theatre; in a suit against the Theatre Company, the judgment was in her favor, on a verdict for $500. The defendant appealed.

The following are the prayers of the plaintiff and defendant, with the action of the trial Court thereon:

*Plaintiff's First Prayer*—The plaintiff prays the Court to instruct the jury, that it was the duty of the defendant to exercise ordinary care, to provide a safe walk or aisle, along which the plaintiff must walk to secure a seat in the defendant's theatre. (*Granted.*)

*Plaintiff's Second Prayer*—The plaintiff prays the Court to instruct the jury that should they find from the evidence that the defendant operates a theatre for the use, enjoyment and amusement of the public, by the staging of vaudeville or moving picture shows, and if the jury finds that the public is invited to use said premises for its enjoyment, on purchase of tickets of admission, and if they further find that in said theatre, there is a pit constructed in the floor, which pit is for the use of the musicians, and which is below the level of the floor, at its nearest point to said pit (if they so find) and if the jury further finds that on the afternoon of November 29th, 1912, there was no guard rail around said pit (if they so find) and if they further find that during the performance on the afternoon in question the defendant had turned the lights in said theatre down, or out, so that the theatre was rendered dark thereby, and if they further find, that the

defendant knew, or by exercise of ordinary care and prudence, could have known that it was dangerous to allow its patrons to walk along the aisle in said theatre near the unguarded pit, while the lights were turned down; and if they further find that the plaintiff purchased a ticket of admission to said theatre, on the afternoon in question, and came upon said premises on the said afternoon, and while the performance was in progress, and while the lights were turned down or out, and while there was no guard railing around the musicians' pit (if the jury find these facts), the defendant, through its servants and employees, consented, allowed or directed the plaintiff to procure a seat therein, in proximity of the danger aforesaid, and gave the plaintiff no notice of her danger and if they further find that the plaintiff by reason of the darkness did not see the musicians' pit, and by reason of its unguarded condition was not apprised of the same, and that by the exercise of ordinary care and prudence on the part of the plaintiff, she could not have known of her danger in said theatre, while proceeding to her seat, and that while so proceeding to her seat, heretofore to wit: On or about the 29th November, 1912, the plaintiff was bruised and injured, in consequence of falling into said unguarded musicians' pit, and that said injury resulted directly from the want of ordinary care and prudence on the part of the defendant, as above set forth in these premises, and not for the want of care or prudence on the part of the plaintiff, directly contributing to the injury, then the plaintiff is entitled to recover. (*Granted.*)

*Plaintiff's Third Prayer*—The plaintiff prays the Court to instruct the jury, that if they shall find a verdict for the plaintiff, then in estimating the damages, they are to consider her health and condition before the injury complained of, as compared to her present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable her from using her ankle, foot or limb, in same way, which in the absence of

such injury, she would be able to use it, and also the physical suffering to which she will be subjected by such use, and also physical and mental sufferings, if any, to which she was subjected by reason of said injury, and to allow her such damages as, in absence of the injury, will be a fair and just compensation for the injury she has sustained.   (*Granted.*)

---

*Defendant's First Prayer*—The defendant prays the Court to instruct the jury that there is no evidence in the case legally sufficient to entitle the plaintiff to recover. (*Refused.*)

*Defendant's Second Prayer*—The defendant prays the Court to instruct the jury that if they shall find from the evidence that the plaintiff could have avoided falling into the orchestra pit in the defendant's theatre by the exercise of ordinary care, and that she did not exercise such care in seeking a seat on the front row of said theatre, then she is not entitled to recover, and the verdict must be for the defendant. (*Granted.*)

*Defendant's Third Prayer*—The defendant prays the Court to instruct the jury that if they shall find from the evidence that the plaintiff should have seen that the rope guard surrounding the orchestra pit in the defendant's theatre had been removed, if she had looked, but that she failed to observe such fact and slipped into the orchestra pit without paying attention to where she was walking, then she is not entitled to recover, and the verdict must be for the defendant. (*Granted.*)

*Defendant's Fourth Prayer*—The defendant prays the Court to instruct the jury that if they shall find from the evidence that there is a permanent injury to the ankle of the plaintiff, but that such permanent injury is due to the treatment received since the accident or to the plaintiff walking too soon, then the plaintiff is not entitled to recover damages for such permanent injury. (*Granted.*)

The cause was argued before Boyd, C. J., Burke, Pattison, Urner, Stockbridge and Constable, JJ.

*R. Howard Bland* (with whom was *J. Kemp Bartlett, Edgar Allan Poe* and *L. B. Keene Claggett* on the brief), for the appellant.

*Henry Zoller, Jr.,* and *J. Edward Tyler, Jr.,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellant on this record conducts a theatre on Lexington street, in Baltimore City, and the appellee was injured therein on the 29th of November, 1912, while she was a patron of the theatre, by falling from the main floor into the musicians' pit which was at the time unguarded.

The declaration alleged that the appellant did not use due care towards the plaintiff, and by the wrongful act, neglect, and the failure of the defendant in not properly guarding the musicians' pit inside the theatre, the plaintiff, although using due care and caution, was injured by falling into said pit.

The *narr.* alleged an act of primary negligence on the part of the defendant, and negatived contributory negligence on the plaintiff's part.

The proprietor of a theatre or other place of public amusement, to which the public is invited and admission charged, is under an obligation to use ordinary care and dilligence to put and keep the place in a reasonably safe condition for persons attending in pursuance of such invitation. He is not an insurer of the safety of persons attending, but he is bound to use ordinary care for their safety and protection, and if an injury results from a breach of this duty he is liable. There is no dissent to this proposition in any of the cases. The law applicable to this class of cases was carefully considered in *Agricultural and Mechanical Association* v. *Gray,* 118 Md. 600, in which JUDGE STOCKBRIDGE said, adopting the principle announced in *Schofield* v. *Wood,* 170 Mass. 415: "A person erecting and maintaining a place of public exhibition must use reasonable care in the construction, maintenance

and management of it, having regard to the character of exhibitions given therein and the customary conduct of spectators who witness them, and he cannot escape liability if he is negligent in the manner in which the guard rail in front of the gallery was constructed and maintained, and if a spectator who is injured by the falling of a guard rail during an exhibition was in the exercise of due care, on the ground that other persons may have contributed to the injury."

In a large number of cases the terms employed to designate the duty of the owner are "due care," "ordinary care," or "reasonable care." Thus this Court said in *Albert* v. *Ryan,* 66 Md. 337, "he who solicits and invites the public to his resorts, must have them in a reasonably safe condition, and not in a condition to risk the lives and limbs of his visitors." See also 29 *Cyc.* 453; *Swords* v. *Edgar,* 59 N. Y. 28; *Thornton* v. *Agricultural Society,* 97 Me. 108; *Phillips* v. *Wisconsin State Agricultural Society,* 60 Wis. 401; *Kann* v. *Meyer,* 88 Md. 551; *Texas State Fair* v. *Brittain,* 118 Fed. 713; *Marti* v. *Texas State Fair Association,* 69 S. W. 432; *Currier* v. *Boston Music Hall Association,* 135 Mass. 414; *Brown* v. *Southern Kennebec Agricultural Society,* 47 Me. 275; 74 Am. Dec. 484; *Dunn* v. *Brown Co. Agl. Soc.,* 1 L. R. A. 754; *Williams* v. *Mineral Park Association,* 128 Iowa, 32. "Yet in each one of the cases where the measure of care or duty is defined by the use of the adjectives "due, ordinary, or reasonable," the application has been the same as in the cases of *Fox* v. *Buffalo Park,* 21 N. Y. App. Div. 321, and *Schofield* v. *Wood, supra.*"

The plaintiff offered evidence tending to prove the following facts: That on the afternoon of November 29th, 1912, she went to the defendant's theatre where vaudeville and moving picture shows are given; that she was accompanied by her sister, Miss Mamie Griffin, and Mrs. Benjamin R. Johnson; that after purchasing tickets of admission at the box office they were admitted to the front row of seats in the theatre, and that an usher in attendance showed them to their seats. The plaintiff had visited the theatre before. The

orchestra or musicians' pit, into which the plaintiff fell, is lower than the main floor of the theatre leading down to it— one witness said it was "about a foot lower, probably more or less," and another, who said he had measured it, testified that "it is just 3½ inches from the floor to the bottom of the pit." The distance between the front seats, and the pit is 25½ inches when the seats are up, and 15¾ inches when the seats are down. On her prior visits to the theatre the plaintiff saw that the pit was guarded by a rope which ran around it, but on the occasion in question this guard rope had been removed, as testified to by the manager of the theatre "for the purpose of one act going through the audience," but the plaintiff was not aware that the guard had been removed. The plaintiff testified that "she did not know the rail had been removed at the time of the accident." She further stated that she was not warned about the danger of the pit by anything in the theatre that afternoon. At the time of the accident she was trying to reach a seat in the front row next to the orchestra. "It is very narrow and there is not room enough for people to sit with their feet comfortably outside of anybody walking along there." When she fell she was right at the end of the aisle and about turned around on the front row to take the seat that was vacant. This seat that she was attempting to take was the third from the aisle. This aisle was the right-hand aisle going toward the stage, and the seat was to the right of this aisle. "As I was stepping towards that seat, I went down in the orchestra pit; I attempted to catch hold of the rope, knowing positively that it had been there," she had been to the theatre many times and had seen the rope. "At the time of the accident there was a moving picture on, and it was extremely dark, and coming from the light, you know, made it seem that much darker. I suppose that the musicians had their lights lit; but I had to get down to the pit to see that. The other part of the theatre was totally dark * *. *. The theatre was crowded and many were standing." When she fell she went "head first and fell on my feet, and that is when I sprained my ankle. She was

helped out by her two companions and Mr. Fitchen." "He caught me up bodily under the arms because I could not move. They then led me over into the box, and I stayed in the box." Her ankle was hurting badly at the time, but she did not examine it until she got home and took off her shoe, when her foot began to swell and she sent for her doctor, Albert Chambers, M. D. "I was off my feet for eight weeks and I cannot get along very well with it now, so I don't know how long I will be laid up." The sprain was very painful, "I never suffered so much pain." Her ankle still pained her. She said that she fell when in the act of turning from the aisle to the seat; that she fell before she realized where she was; that she was not able to see very much. It was, she further testified, "very dark," and she thought she would catch hold of the rail and rope, but that they had been removed without her knowledge. The testimony of the plaintiff was corroborated by that of Mrs. Johnson and Miss Griffin upon material points and upon the darkness pervading the theatre at the time.

Dr. Albert W. Chambers testified that he was called to attend the plaintiff on the 2nd of December, 1912, and that he found her suffering with a sprained ankle and a sprained foot: that she had quite a good deal of swelling about the ankle and the foot; a considerable amount of dislocation, and was suffering a good deal of pain; that she was still having pain, and that "whatever disability she now has is likely to be permanent." He further testified that: "The probable results of a badly sprained ankle and foot are more likely to be the impairment of the functions, a certain weakness about the ankle: the ankle will not be as strong as it was before, and the smaller joints between the different bones in the feet are apt to be weak and painful. A bad sprain can cause a falling arch, but I am not willing to say that that will be the result in this case. I am not willing to say that is going to happen. The pain and the impairment of the functions are there now and they are liable to stay there, and any impairment from this time on is apt to be permanent."

The defendant offered evidence to the effect that there were sufficient lights burning at the time of the injury to show any object in the house or any obstruction and that the light from the moving picture was sufficient to enable one to see anything within five rows back. At the conclusion of the case the Court granted three prayers on behalf of the plaintiff and four on the part of the defendant. There were no special exceptions filed. These prayers, which the reporter is requested to set out in the report of the case, correctly submitted the questions of primary and contributory negligence to the jury, and also advised the jury as to the correct measure of damages. The first prayer of the defendant asked the Court to decide that there was no evidence in the case legally sufficient to entitle the plaintiff to recover. This prayer was refused, and the verdict and judgment being in favor of the plaintiff; the defendant has prosecuted this appeal. Assuming, as we must do, in passing upon this prayer the truth of the testimony offered by the plaintiff's witnesses, we are of opinion that the prayer was properly refused. It is a matter of common knowledge and observation that a depression in a floor of the depth of the one described is sufficient to cause one to fall under the circumstances testified to by the plaintiff's witnesses, and the defendant might have reasonably anticipated that a patron might have fallen in attempting to reach one of the front seats in the darkness. The jury might well have concluded that by placing a guard rope around the pit, the defendant recognized the danger of leaving it unprotected. To have left this pit unguarded and unprotected under the circumstances might well have been regarded by the jury as an act of negligence; nor could the Court have decided, as a matter of law, that the plaintiff was guilty of contributory negligence. The questions of primary and contributory negligence were properly left to the jury under the prayers granted. In *Knecht* v. *Mooney,* 118 Md. 583, it was said by JUDGE THOMAS: "It is said in *United Railways* v. *Seymour,* 92 Md. 425, that 'negligence is usually a question

for the jury to decide upon all the facts of the case'; *Shipley's Case,* 31 Md. 368; *B. & O. R. R.* v. *Miller,* 29 Md. 252; and 'when it can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it'; and in the same case JUDGE PAGE said that 'unless the uncontradicted evidence in the case proves such a glaring act of carelessness on the part of the appellee as to amount in law to contributory negligence, it is the duty of the Court to submit the matter to the jury.' In the case of *Cooke* v. *Baltimore Traction Co.,* 80 Md. 551, this Court held that the uncontradicted evidence in the case must establish some distinct, prominent and decisive act, about which ordinary minds would not differ, in order to justify the Court in pronouncing the plaintiff's conduct such contributing negligence in law as to prevent a recovery.'" We find in this record no such decisive act of negligence on the part of the plaintiff as would have warranted the Court in directing a verdict for the defendant.

During the course of the trial the defendant reserved five exceptions to rulings on evidence. The second and fifth exceptions were abandoned in this Court, and we find no reversible error in any of the other rulings.

*Judgment affirmed, with costs.*