Dwyer, Adm'x, etc., *v.* NATIONAL STEAM-SHIP Co.

*(Circuit Court, E. D. New York.* ———, 1880.)

1. NEGLIGENCE—OPEN HATCHWAY—SHIP.—An open hatchway on a ship, when provided with the usual combings, is not evidence of negligence on the part of the ship-owner.

   *Murray* v. *McLean,* 57 Ill. 378.

2. SAME—EMPLOYER—INDEPENDENT CONTRACTOR.—An employer is not answerable for the negligence of an independent contractor.

   *Pickard* v. *Smith,* 10 Com. Bench. N. S. 470.

Motion to set aside verdict, and for new trial.

*Morris & Pearsall,* for plaintiff.

*John Chetwood,* for defendant.

BENEDICT, D. J.    This is an action at law to recover of the owners of the steam-ship Canada for the death of one John Dwyer, who fell through the hatchway of that steamer on the twentieth of October, 1878, and was killed.    At the trial the court directed a verdict for the defendant.    A motion to set aside the verdict and for a new trial has been made, and is now to be disposed of.

The facts appearing at the trial are as follows:    The deceased, on the morning of October 30th, and while in the act of arranging the pipe of a grain elevator in the hatch, stepped upon a section of the grating of the hatch, the section tilted under his weight, and he fell through the hatchway to the orlop deck and was killed.    The hatchway was about 12 feet long.    The grating was constructed in sections, each section about two feet wide, and intended to fit in a groove when in position.    No defect of construction or weakness of materials in the grating is pretended.    The section on which the deceased stepped did not break, but tilted under his weight, and solely because it was not properly placed in the groove where it was intended to fit.    Had it been in its proper position it would have been abundantly strong to support the deceased without danger.    Similar hatchways having similar gratings are a common feature in vessels of this class.    They are a necessary feature in the deck of a ship, and their position in the ship is controlled by the necessity of the business.

It appeared in evidence that during the night before the accident in question the gratings had been placed upon this hatchway, with a tarpaulin over them for the purpose of preventing the falling rain from wetting the grain then being loaded into the steamer by means of the elevator. There was no direct evidence showing by whom the grating was placed upon the hatchway, or how it was there placed, or whether it remained in the position as first placed up to the time of the accident. It was proved that a few moments before the accident men employed by Walsh Brothers, stevedores, had taken off the tarpaulin from the hatchway, and removed several sections of the grating in order to facilitate their labor in loading the cargo. At the time of the accident the deceased and others employed by Burgess, the owner of the elevator, were engaged in putting another length of pipe to the elevator pipe for the purpose of passing grain through the hatchway into the hold. The deceased was an employe of Burgess, who had a contract with the defendant to transfer the grain from a canal-boat to the steamer. The deceased was not, therefore, the servant of the defendant, but of Burgess, an independent contractor.

Walsh Brothers were also independent contractors, who had a contract with the defendant to discharge and load the steamships of the line at so much per ton. The stevedore's men at work on the cargo at this time were, therefore, not the servants of the defendant, but of Walsh Brothers.

The cause of the accident is clearly proved to have been the unsafe manner in which the section of the grating upon which the deceased stepped was placed upon the hatchway. The actual wrong-doer was the person who placed the grating upon the hatchway during the night, or some person who changed the position of the grating after it had been so placed; but there is no evidence from which it can be determined whether the negligence occurred at the time the grating was placed upon the hatchway, or at a subsequent time, or by whom the negligent act was done. Accordingly it is contended that the defendant, being the owner of the steamer, was charged with the duty of maintaining the hatchway in a

safe condition, and by reason of the failure to discharge that duty is liable, without proof as to who was the wrong-doer.

If I were convinced that the condition of the hatchway, at the time of the accident, was proof of a failure on the part of the defendant to discharge a duty attaching to him in respect to the hatchway, I should find no difficulty in holding the defendant liable, whether the grating was misplaced by the stevedore, the elevator men, or the crew of the vessel. But I cannot agree to the proposition that it was part of the defendant's duty to maintain a safe covering upon this hatchway. Hatchways are well-known features and sources of dangers on a ship. They are intended to be open a large portion of the time, especially when in port, not only for the purposes of loading and unloading cargo, but also for ventilation. An open hatchway on a ship, when provided with the usual combings, is not evidence of a neglect of duty on the part of the ship-owner. On the contrary, a ship-owner has the right to allow the hatchways of his ship to remain uncovered and unprotected, except by the usual combings; and all persons moving upon the decks of a ship are chargeable with notice of the probable presence of open hatchways on the deck. Neither is it the duty of the ship-owner to maintain a guard stationed at the hatchway of his ship for the purpose of protecting persons from injury by falling into it. Such a duty would be burdensome in the extreme, and is not required by the law. *Murray* v. *McLean,* 57 Ill. 378. The requirement would be unreasonable, has never been observed in practice, nor, so far as I know, declared in any adjudicated case.

The cases cited, where the injury arose from defective machinery, afford no support to the position taken by the plaintiff, because here there is no pretence that the injury arose from any defect, weakness, or faulty construction of the grating. The cases cited, declaring a liability for injury arising from holes in thoroughfares, improperly protected holes in floors, and the like, are equally inapplicable here. The deck of a steamer is not a highway, and is a place where open hatchways must be maintained, and therefore are to be expected and avoided.

More in point are the cases where injury has arisen from man-traps, by which a person has been lured into a dangerous position, to his injury, although it is not clear that a grati_g upon a ship's hatchway can in any proper sense be said to be a lure. Indeed, I do not find any adjudicated case that can be considered authority for holding that a ship's hatchway, wholly uncovered as to a large portion, and insecurely covered as to a small portion, by reason of an improperly-placed section of the grating, about which stevedores and elevator men were at work, is calculated to expose the men to an unforeseen or unnecessary danger.

The character and uses and location of a ship's hatch, even when wholly covered by a grating, are calculated rather to warn than to induce a person to stand upon the grating, and certainly such would be the case when, as here, only a portion of the grating was upon the hatch. But if it be assumed in this case that the presence of some of the sections of the grating upon the hatchway at which the deceased was working gave him the right to suppose that those sections afforded a safe standing-place, the liability of the defendant does not appear until it be shown that the insecure section was put in its unsafe position by the defendant. As has been seen, no liability attaches to the defendant by reason of a failure to discharge a known duty. If the defendant is liable at all, that liability arises not from an act of omission. He had the right to omit to cover the hatchway, and the bare fact that it was wholly uncovered, or partly uncovered, is not sufficient, therefore, to establish his liability. He is liable, if at all, for an act of commission, namely, the act of placing the grating upon the hatch in a negligent manner, or the act of disturbing the grating after it had been placed upon the hatchway in a proper manner.

The decisive question, therefore, is whether there was sufficient evidence to authorize the jury to find that the defendant improperly placed the grating upon the hatchway, or disturbed it after it had been once properly placed. Here the case of the plaintiff rests upon the presumption that everything done on board the steamer, in respect to the hatchway, was di-

rected to be done by the owner of the steamer. There is evidence showing that gratings were put on the hatchway during the night, leaving one off for the passage of the elevator pipe, and that a tarpaulin was put over the hatchway to keep the falling rain from reaching the grain as it went into the ship. But there is no evidence to show who it was that put on the grating or the tarpaulin, or to show that the section which gave way under the deceased was disturbed after being put on in the night. There is a bit of evidence showing that the crew of the steamer were employed in washing the decks during the night, and it has been argued that the grating and tarpaulin were put on at that time to protect the cargo from the water used to wash the deck. But the evidence is positive that neither the grating nor the tarpaulin were put on or disturbed at that time, nor for that purpose.

Conceding that the plaintiff is entitled to invoke the presumption upon which, in the absence of evidence as to the fact, he is compelled to rely, the difficulty is that the case contains evidence by which the presumption is overthrown. The positive testimony of the boatman of the steam-ship from the steamer's deck, that he did not meddle with the grating, or see it meddled with by any of the crew, and the evidence showing that it would be for the stevedores engaged in loading the vessel to put on and remove the grating at the hatchway, is sufficient evidence to repel any presumption that the wrong-doer was one of the crew. The evidence points so strongly to the stevedores as the wrong-doers as to forbid any other conclusion by the jury. Indeed, it appears to be conceded, in behalf of the plaintiff, that such was the fact; for one point made in the brief is that the defendant "by the contract authorized Walsh to do the very act which caused the injury, to-wit, to remove the hatches, and is responsible for his negligence."

The case is, then, reduced to the question of law, whether the defendant is responsible for the negligent act of the stevedore in improperly placing or in displacing the grating on which the deceased stepped.

Upon this question I entertain no doubt. The contract with the stevedores, Walsh Brothers, was to load and unload the cargoes of this and other steamers belonging to the defendant at so much per ton, and, as is said in the plaintiff's brief, "the injury complained of did not result directly from anything which the contractor was bound by his contract to do." If defendant had been under a duty to protect this hatchway by gratings or otherwise, or if the stevedore had been employed or directed by the defendant to cover this hatchway, the case would have been different; but, in the absence of any such duty devolving upon the defendant, or of any evidence of such employment of the stevedore by the defendant, it is quite clear that the defendant's liability has not been established. The case comes within the rule declared in a case greatly relied on by the plaintiff, where it is said: "If an independent contractor is employed to do a lawful act, and in the course of the work commits some casual act of negligence, the employer is not answerable." *Pickard* v. *Smith*, 10 Common Bench, N. S. 470.

The motion to set aside the verdict must be denied.