## THE GLADIOLUS.[1]

### (*District Court, S. D. Georgia.* June 9, 1884.)

PERSONAL INJURY—PRESUMPTION OF NEGLIGENCE.

Where a stevedore, engaged in his usual occupation, falls through an ordinary coal-bunker hatch that is used for stowing cargo, the presumption is of his negligence rather than that of the officers of the vessel.

In Admiralty.

*Richards & Heywood, Garrard & Meldrim,* and *J. R. Saussy,* for libelant.

*A. Minas* and *Chisholm & Erwin,* for claimant.

LOCKE, J. The libelant, Margaret McGinty, complains that her husband, Thomas McGinty, while employed as foreman of a stevedore's gang on board the steam-ship Gladiolus, on the nineteenth day of September, 1883, fell through a hatchway, which had been negligently and carelessly left open, and was so badly injured that he died from the effects of the fall in about six hours, and she brings this action for $15,000 damages.

The only questions in the case found necessary to consider have been as to the negligence of the officers of the ship in leaving the hatchway uncovered, or that of the party killed in falling through it. The ship was constructed with what is known as a cross coal bunker, forward of the engine-room, used sometimes for reserve coal, and frequently for carrying cargo. This was separated from cargo hold No. 2 by an iron bulk-head up to the lower deck, and above that from between-deck No. 2 by a wooden partition to the upper deck. Through this partition or wooden bulk-head were two doors, twelve feet apart, each three feet and seven inches wide, leading from between-deck hold No. 2 into this between-deck coal bunker. Just inside this partition and between the doors, was the hatch through which McGinty fell. It was twelve feet athwart ship, and three feet fore and aft. Immediately over it, on the main deck, was a hatchway of the same dimensions. It appears from all the circumstances of the case, although it is not stated in exact language, that this portion of the ship had been fitted to receive cargo, and turned over to the stevedores. One of their gangs had been at work the day before, taking out the last of the coal, and sweeping and getting ready for cargo. On the morning of September 19, 1883, the gang, of a portion of whom McGinty was foreman, came down to commence stowing hold No. 2. They found the main-deck hatches all on, and removed those over hold No. 2, but the between-deck hatches they found off. They had received but two or three bales of cotton when the deceased passed through one of the open doors into the between-

[1] Reported by W. B. Hill, Esq., of the Macon bar.

deck of this coal bunker in search of "toms"—short pieces of wood used in stowing cotton—and fell through the hatchway. He spoke but a few words upon being taken out, and lived but a few hours.

It is urged in behalf of the libelant that it was gross negligence on the part of the ship's officers to leave this hatch off and the doors open, so that any one could go in so as to fall through it, and that although deceased was not actually assigned to work in that compartment it is usual and customary for the stevedores to go anywhere through the ship in search of dunnage. In reply it is claimed that McGinty had no business in this bunker, as they were not stowing it that day, and it was negligence for him to go there without having the upper hatches removed, if there was not sufficient light to see, and if there was light it was negligence that caused his fall, and that there was no negligence in leaving the hatchway open at the time it was. The leaving open a common between-deck hatchway while the vessel is lying in port, under ordinary circumstances, is not presumptive evidence of negligence on the part of the ship. This is not only shown to be the custom by the testimony in this case, but it has been so frequently commented upon in decisions as to be too well settled to be questioned. *The Victoria,* 13 FED. REP. 43; *Dwyer* v. *Nat. Steam-ship Co.* 4 FED. REP. 493; *The Carl,* 18 FED. REP. 655; *The Germania,* 9 Ben. 356; *The Helios,* 12 FED. REP. 732. While the falling through an open hatchway by a stranger, a landsman, visitor, or passenger on board a vessel might not be presumptive of negligence on his part, where such accident occurs to a seaman or stevedore, who is accustomed to hatches, their presence, necessity, uses, character, and location, the case is different, and unless the circumstances of the particular case are such as to rebut it, the first presumption is of his negligence.

Do the circumstances in this case overcome the presumption in favor of the claimant, and establish that in favor of the libelant? This was not, as in the case of *The Helios, supra,* a small, unused hatch, without coamings, but was one for the frequent, if not general, stowage of cargo; such as, the learned judge in that case remarks, "stevedores must at their peril look out for, and are presumed to know about." There was a main-deck hatch directly above it, which, although closed at the time of the accident, was notice, if any such was needed, of the existence of this one. There was no presumption that any of the between-deck hatches were closed, as none of them were found to be when the main-deck hatches were removed; but, on the contrary, the presumption to a careful man would have been that they had been left off intentionally, to dry, air, and ventilate the ship. The testimony shows that but a short time before, deceased had assisted in stowing a ship of similar construction, with like bunkers and hatches as this, and in that case helped stow the bunkers, and he knew these were to be loaded. He had been stevedore for years, and was familiar with the hatches and their locations. The amount

of light in the bunker at that time becomes quite an important question in the consideration of this case. One of the witnesses for libellant says "it was some dark;" the head stevedore says he thinks there was light enough for a careful man to see; while the officers of the vessel speak of its being "total darkness." This idea of total darkness I cannot accept as being applicable to the condition of things shown to have been at the time of this accident, and can only believe that they must have had reference to times when the main-deck cargo hatch No. 2 was very nearly or quite closed. It was a bright, clear morning in September, about 9 o'clock, the vessel heading south-easterly. The main-deck hatchway, 25 feet long by 12 feet broad, was fully open and unobstructed. Within three feet and seven inches of this hatchway was the bulk-head or partition, with two open doors, each three feet and five inches wide, only twelve feet apart, and directly in range with the corners of this large open hatchway, and it seems absolutely inconsistent with the principles of natural science that this bunker could have been so dark that a reasonable man, using ordinary care, could not have seen an open hatchway. In either event the conclusion of negligence on the part of the deceased seems compulsory. Was it as dark as some witnesses state, a careful man would not have entered without a light; or, if he had, it would have been in such a careful manner that the coamings of the hatch would have been a warning; and if it was as light as the circumstances appear to show it must have been, ordinary care would have shown the open hatch. Had a careful master that morning, before the arrival of the stevedores, had his attention called to the condition of the hatches, I cannot consider that he would have deemed it necessary to send men below to close this one to prevent the possibility of some stevedores' falling through it. It had, for all intents and purposes, at this time become a cargo hatch, and could reasonably be treated as such.

The conclusion on these points precludes the necessity of considering the numerous other questions raised in the argument.

Although the case is one that appeals strongly to the sympathy of the court, under the law I can reach but one decision, and the libel must be dismissed; but since there may have been, before a full and careful investigation of the case, reasonable grounds for considering the ship liable, and as I believe the suit has been prosecuted in good faith upon the principle of equitable discretion in such matters in courts of admiralty, it is ordered that the claimant pay the costs.