TEXAS COMPANY, INCORPORATED, *vs.* WASHINGTON, BALTIMORE & ANNAPOLIS ELECTRIC RAILROAD COMPANY.

*Negligence—Freight Piled on Railroad Platform—Injury to Invitee—Contributory Negligence—Employers' Liability—Action Against Wrongdoer—Parties.*

In an action against a railroad company on account of injuries caused by the fall of pieces of freight, a question to a witness which necessarily included testimony as to the manner in which defendant's servants piled freight on other days and at different places on the same platform was properly excluded.

p. 172

The true ground of liability of the owner of premises for injury to one whom he invites thereon is the owner's superior knowledge of the latent or concealed peril which causes the injury.                                        p. 173

One invited on another's premises is guilty of contributory negligence precluding recovery for an injury received while there, if he fails to use due care to avoid dangers which he knows from past experience to exist on the premises, or which he should know to exist because of his knowledge of the character of the premises, or because the dangers are so obvious that any ordinarily prudent man would see them and guard against them.                                  p. 174

One familiar with freight sheds, who, in a congested freight shed with which he was fully acquainted, pulled aside the first piece of freight which he found in his way, without stopping to see whether it supported other pieces of freight piled around it, was guilty of such recklessness as to preclude recovery by him for an injury caused by the fall of such other pieces, as a consequence of his reckless act.                          pp. 174, 175

Error in an instruction in an action for negligence is not ground for reversal on plaintiff's appeal, if plaintiff was guilty of such contributory negligence as to prevent a recovery.  p. 175

Under Acts 1922, ch. 303, amending section 58 of the Workmen's Compensation Act, the employer, if he is not self-insured, is not a necessary party to a suit to enforce the liability of a third person, and he should not be made a party plaintiff thereto.                                      p. 176

*Decided January 16th, 1925.*

Appeal from the Superior Court of Baltimore City (STUMP, J.).

Action by the Texas Company, Incorporated, to the use of the United States Fidelity and Guaranty Company, to the use of John Miller, against the Washington, Baltimore and Annapolis Electric Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, and WALSH, JJ.

*J. Kemp Bartlett, Jr.,* with whom was *Bartlett, Poe & Claggett* on the brief, for the appellant.

*George Weems Williams,* with whom were *Marbury, Gosnell & Williams,* and *Clarence W. Sharp,* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

This suit was brought by the Texas Company, Incorporated, for the benefit of The United States Fidelity and Guaranty Company and John Miller, against the Washington, Baltimore and Annapolis Electric Railroad Company, to recover for injuries sustained by John Miller and alleged to have been caused by the negligence of the defendant, and the present appeal is from a judgment in favor of the defendant.

Miller, one of the equitable plaintiffs, was employed by the Texas Company in the capacity of chauffeur's helper, and on February 1st, 1923, he, together with a chauffeur named Walls, took one of the Texas Company's trucks to the freight shed of the defendant in Baltimore City for the purpose of obtaining about forty empty oil drums consigned to the Texas Company. The defendant had sent a postal card to the Texas Company notifying it of the arrival of the drums and asking that they be called for, and it was in response to this postal that Miller and Walls went to the freight shed. On arriving there the truck was placed at a point about fifteen feet from the oil drums, the space between the truck and the drums being filled with freight, and Walls, in accordance with the practice and rules of the defendant, went to the cashier's office to have his card O. K.'d so that he could obtain the drums. After leaving the cashier's office he went to the delivery clerk of the defendant, a Mr. Ballard, to turn over the card, and that gentleman being busy with another customer, Walls walked over to the oil drums, and just as he reached them Miller suffered the injury for which this suit

was brought. When Walls went to the cashier's office, Miller went on the platform of the freight shed, and as, in his own words, "there was all kinds of freight in front of those drums, barrels, boxes and bales, and things of that kind," he asked another employee of the defendant, a Mr. Mason, whom he described as a receiving clerk, whether they could have some help in getting the drums. Mr. Mason said "that they were all busy and could not give us any help, and that there were two of us on the truck to get the empty drums." Miller also testified that "Mr. Walls, the chauffeur, and I had gotten empty drums there lots of times before," and that they usually got them without help from the defendant. * * * "On this occasion I asked Mr. Mason, and he said he was too busy to have any one help me. Then I went into the aisle, and there was an empty barrel there which looked like a potato or flour barrel. This aisle was leading back to the drums, and the freight was piled on both sides of it. The drums were at the far end of the aisle. There was nothing in this aisle except this empty potato barrel. It was necessary to move this barrel because the aisle was not wide enough to bring the drums through, and as soon as I moved it a radiator fell over on my foot. I could not get in and get the drums without moving the barrel, and as soon as I moved it the radiator fell on my foot and boxes fell all around me."

On cross-examination Miller stated that he had been going to the defendant's freight station for drums for nearly two years, that the freight shed was open on both sides, and that it was lighter than the court room, in which the case was being tried. He also admitted that in his application for compensation he stated that the radiator which fell on him seemed to be leaning, and he testified further on this point, "yes, it seemed to be leaning because there was other freight piled up against it. Q. You saw it? A. Yes. Q. And it was leaning when you saw it? A. Well, it looked like it was leaning, yes, sir. Q. Looked like it. But you saw that radiator? It was daylight, wasn't it? A. It was daylight, yes, sir. Q. I mean you could see the various articles around,

couldn't you? A. Well, there was so many. There was lots
of stuff there, yes, sir. * * * Q. And you could see the vari-
ous articles of freight? A. Yes, sir. * * * Q. Do you remem-
ber telling the person who made out this (application for
compensation) that the radiator seemed to be leaning? A.
Well, then, at that time I knew everything perfect, but it has
been a good while now to remember everything exactly the
way it was, Q. Sure, of course, Mr. Miller. But have you
any doubt that that is correct? A. Yes, that is perfect, the
way it is there now. Q. That the radiator seemed to be lean-
ing? A. Yes. Q. How did the radiator seem to be leaning,
against anything? A. Well, I do not remember that exactly
now either, but there was a barrel there I had to move to get
in the aisle, and there was not only a radiator, but other things
there, too, a whole lot of stuff. They were not all setting
straight, no matter what it was. Q. The radiator was lean-
ing? A. It is in all those stations, always."

He then continued: "I have been engaged around freight
terminals ever since I have been with The Texas Company.
* * * I know about the way freight is ordinarily piled. * * *
The radiator was near the barrel, for as soon as I moved the
barrel it fell on me. * * * I do not know whether the empty
barrel held the radiator up. It may have, but I did not see
it. * * * The radiator had boxes against it on the other side."
He also stated that the freight shed was congested that day,
and that the freight was piled about the same way it ordi-
narily was in all freight sheds visited by him.

It further appeared that Miller filed a claim for compen-
sation under the provisions of the Workmen's Compensation
Act, received an award, and had signed a final settlement
receipt. The present suit was instituted under the provi-
sions of section 58 of article 101 of the Code (Workmen's
Compensation Act), which authorizes the recovery of dam-
ages where the injury was caused under circumstances creat-
ing a legal liability in some person other than the employer.

At the trial below the plaintiff offered five prayers and the
defendant six, but the court refused all the prayers of the

plaintiff and the defendant, and gave an instruction of its own, and, the verdict of the jury being for the defendant, the plaintiff appeals.    There are three exceptions in the record, the first two being to rulings on the evidence, and the third to the action of the court in refusing to grant the five prayers offered by the plaintiff, and in granting the court's own instruction.

The first and second exceptions were taken to the refusal of the court below to allow the witness Mason to answer the following questions: "In what manner was the work of un-loading cars by this colored labor done, and state whether, when freight was taken off cars and put on the platform, it was carefully and safely piled in place"? We find no error in these rulings.    The answers to the questions asked would necessarily have included testimony regarding the manner in which the defendant's servants piled freight on other days and at different places on the platform, and such testimony would, in our opinion, have been irrelevant to the issues in this case.

The third exception embraces the rulings of the court in rejecting the five prayers offered by the plaintiff, and the action of the court in granting its own instruction.    The court's instruction, which was the only one given the jury, was based on the theory that Miller could not recover unless the jury found that the truck driver, Walls, had directed him to go in amongst freight of other consignees to get out the freight the truck driver had come for, and under this instruction the jury found a verdict for the defendant.

We do not consider it necessary to pass upon the validity of the foregoing instruction, nor upon the correctness *vel non* of the prayers offered by the plaintiff, because in our opinion the second prayer of the defendant, asking that the case be taken from the jury on the ground of contributory negligence, should have been granted, and an examination of the legal principles involved, and the facts in this case will show clearly the reasons for this conclusion.

Assuming, without deciding the point, that Miller was, as the appellant contends, either expressly or impliedly invited

by the defendant to come to the freight shed, and then to go personally and get the freight consigned to his employer, the measure of the defendant's responsibility is thus stated in 20 *R. C. L.* 55, par. 51:

"The authorities are entirely agreed upon the proposition that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils."

There is, however, a corresponding duty to use due care imposed on the person invited, as is shown by the following quotation from the succeeding paragraph in 20 *R. C. L.*:

"The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * * And hence there is no liability for injuries from dangers that are obvious, or as well known to the persons injured as to the owner or occupant." Both of these statements from *Ruling Case Law* were quoted with approval by Chief Judge Boyd in *Fulton Building Co. v. Stichel*, 135 Md. 542, and they are fully sustained by both reason and authority. See *Thompson on Negligence,* Vol. 1, page 871; *Cooley on Torts* (3rd Ed.), vol. 2, pgs. 1258-1259; 29 *Cyc.* 453; *The Gladiolus,* 21 Fed. 418; *Dwyer, Adm'x, etc. v. National Steamship Co.,* 4 Fed. 493; *Caniff v. Blanchard Nav. Co.,* 66 Mich. 638; *Dubrule v. Benjamin F. Smith Co.,* 68 Atl. Rep. 544, and *Flynn v. Central R. R. Co.,* 142 N. Y. 439.

There is a confusion of language in some of the cases, so that at first glance it is not always clear whether the decision rests on the ground of lack of negligence on the part of the defendant, or lack of due care on the part of the plaintiff, but a closer examination shows that, whatever language may be used, the real underlying principle of the decisions is the contributory negligence of the plaintiff. And this contributory negligence arises from the failure of the plaintiff to use due care to avoid dangers which he knows from past experience exist on the premises to which he has been invited, or which he should know exist because of his knowledge of the character and kind of premises to which he has been invited, or because the dangers are so obvious that any ordinarily prudent man would see them and guard against them.

Applying these principles to the present case, we find that Miller, the party injured, according to his own testimony, had been going frequently to the freight shed of the defendant and to other freight sheds in Baltimore City for a period of about two years immediately preceding the injury complained of, that he was familiar with the manner in which freight was ordinarily piled in these sheds, that it was piled in comparatively the same way in all of them, that he had often gone on the defendant's platform and gotten freight, that the defendant's freight shed was open on both sides and there was plenty of light, that on the day he was injured there was a lot of freight on the platform, and at the point where Miller was it had been piled in such a way as to form an aisle leading to the oil drums consigned to Miller's employer. That Miller saw all this freight, that it was around the radiator which fell and injured him, that there was an empty barrel in the aisle against or in close proximity to the radiator, *that the radiator seemed to Miller to be leaning,* that he did not know whether the barrel supported the radiator or not, but it might have supported it, and that as soon as he moved the barrel the radiator fell on him, and boxes fell all around him. The only thing which Miller says he did not see was whether or not the barrel was supporting the radiator,

and on this point he says: "I do not know whether the empty potato barrel held the radiator up. It may have, but I did not see it."

We think the situation created by the relative positions of the barrel and the leaning radiator must have been obvious to anyone who looked at them, and Miller was certainly not exercising due care if he moved the barrel away from the leaning radiator, without looking to see what effect the removal of the barrel would have on the radiator and the other freight piled around it. And if Miller had seen the situation he would not have been injured, for he said himself that if he had noticed that the barrel supported the radiator, he would have seen the latter start to fall and "could have grabbed it."

It has long been settled in this State that a court is justified in saying that certain conduct is *per se* contributory negligence, where the case presents "some such feature of recklessness as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men." *Hyde v. Blumenthal,* 136 Md. 451; *B. & O. R. R. Co. v. State, use of Wiley,* 72 Md. 40; *Rosenthal v. Durkin,* 142 Md. 18.

Miller's action, as testified to by himself, in going on a congested freight shed with which he was fully acquainted, and pulling aside the first piece of freight he found in his way, without stopping to see whether or not it supported other pieces of freight which were piled all around it, certainly constituted recklessness on his part, and as this act of recklessness was the proximate cause of the radiator, boxes, and other freight falling on and around him, and injuring him, we are constrained to hold that he was guilty of contributory negligence which bars his recovery.

At the trial below, a verdict was rendered for the defendant, and the plaintiff appealed. However, even conceding that the trial court erred in the instruction which it gave the jury, no harm was done to the appellant, because the contributory negligence of Miller prevented a recovery. "To

justify a reversal there must be substantial error apparent, and that to the prejudice of the appellant." *Bannon v. Warfield*, 42 Md. 22; *Hanson v. Campbell's Lessee*, 20 Md. 223. The judgment will accordingly be affirmed.

As we have seen above, this suit was brought under the provisions of section 58 of article 101 of the Code, and at the argument it was contended that the Texas Company, Miller's employer, not being self-insured, should not have been made a party to the suit. The point was not raised on the record, and hence is not properly before us, but in order that the practice in this class of cases may be settled we will pass upon it.

Chapter 800 of the Acts of 1914 (article 101 of the Code), was the original Workmen's Compensation Act, and under section 57 of that act "any employer" was authorized to enforce the liability of any third party in the premises, for the benefit of the insurer and the employee. Several amendments have been made to this provision of the law, and under the last one (chapter 303 of the Acts of 1922, codified as section 58 of article 101), it is provided that "any employer, *if he is self-insured* (italics ours), insurance company, association or the State Accident Fund may enforce for their benefit, as the case may be, the liability of some other person." In view of this amendment of the law, as set out in section 58, *supra,* we think that the employer is no longer a necessary party to the suit, unless he is self-insured, and hence in the present case the Texas Company, Inc., should not have been made a party plaintiff.

*Judgment affirmed, with costs.*