## HOWARD YOCKEL *v.* NELS GERSTADT.
[No. 60, October Term, 1927.]

*Decided January 11th, 1928.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Paul Schmidt,* with whom were *Isaac Lobe Straus* and *Avrum K. Rifman* on the brief, for the appellant.

*Walter V. Harrison,* submitting on brief, for the appellee.

Digges, J., delivered the opinion of the Court.

The plaintiff below (appellant here) sued the defendant (appellee) for damages arising from injuries sustained by him alleged to have been caused by the negligence of the defendant. At the close of the plaintiff's case the defendant offered a number of prayers which the court granted, the effect of granting any one of which was to direct a verdict for the defendant. Under these instructions the jury rendered a verdict for the defendant, upon which verdict judgment was entered in favor of the defendant for costs. From that judgment the appeal here was taken. In the view we take of the case, it is unnecessary to discuss the action of the court in respect to each one of these prayers, for the reason that in our opinion the defendant's prayer which instructed a verdict in his favor because of the contributory negligence of the plaintiff was properly granted.

No absolute rule as to what constitutes contributory negligence can be promulgated which would be applicable to all cases, because it, like primary negligence, is relative and not absolute, and being relative, it necessarily depends upon the particular circumstances of each case. *Siejak v. United Rwys. Co.,* 135 Md. 367; *Ches. & Pot. Tel. Co. v. Merriken,* 147 Md. 572. While this is true, this court has repeatedly and uniformly held that, to constitute contributory negligence as a matter of law, the negligent act of the plaintiff relied on must be prominent, decisive, and one about which ordinary minds would not differ in declaring it to be negligence. The act must present such features of negligence as to leave no opportunity for difference of opinion in the minds of ordinarily prudent men as to its imprudence. *Merrifield v. Hoffberger,* 147 Md. 134; *Balto. & O. R. Co. v. Hendricks,* 104 Md. 84; *Cook v. Traction Co.,* 80 Md. 558; *Taxicab Co. v. Emanuel,* 125 Md. 246; *Delmar v. Venables,* 125 Md. 471; *Balto. Asphalt Block & Tile Co. v. Klopper,* 152 Md. 529; *Md. Ice Cream Co. v. Woodburn,* 133 Md. 295; and many others which might be cited.

The evidence on behalf of the plaintiff in this case as to this point consists of his own testimony and that of one other

witness, Klotz, a workman on the state road. In determining this question, as was said in the case of *Merrifield v. Hoffberger, supra,* "we are bound to take that evidence as being true, to assume all legitimate inferences deducible therefrom, and place upon it that construction which is most favorable to the plaintiff's right of recovery." Considering the testimony in this case in the light of that rule, the question is, Does it show such a distinct, prominent, and decisive act of negligence on the part of the plaintiff, upon which there could be no difference of opinion in the minds of ordinarily prudent and intelligent men? We think it does.

The testimony discloses that the appellee was the owner of a one ton truck, which on March 23rd, 1925, was loaded beyond its capacity and was being driven by Parkes, an employee of and accompanied by the appellee, along the state highway in Anne Arundel County. While proceeding south and going down hill, the brakes failed to hold, resulting in the truck running into a stump along the side of the road and overturning, so that the body of the truck rested upon the contents, with the wheels in the air. From some cause not clearly shown, a fire started in the truck, either before or immediately after its upset; and the upsetting of the truck and the attendant fire were responsible for the gathering of a crowd consisting of from twenty to thirty persons. After the truck had been in this position and on fire for about fifteen minutes, the plaintiff, driving an automobile and traveling north, approached the point along the road where the truck lay. When he got about opposite the burning truck, according to his testimony, he was hailed by several persons, two of whom were the appellee and Klotz; he stopped his automobile about fifty feet north of the truck, and got out to give assistance, joining the crowd in the vicinity of the truck. He further testified that he was asked by Klotz to get the license number, and while standing twenty-four feet away, calling off the license numbers, the gasoline tank on the truck exploded, causing the injury for which he seeks damages; that nothing was said to him by the owner or driver of the machine about its dangerous condition; that

he saw fire on the truck, but not at the gasoline tank; that some of the crowd were standing farther away and some closer than himself. The plaintiff's other witness, Klotz, testified that the plaintiff passed the burning truck, stopped his automobile thirty or forty feet beyond, got out, and ran back to the crowd; that he did not hear any warning given by the driver or owner of the truck; that there were lots of people around; that "it was pretty the way the truck was burning; for Benfield that was something new and interesting." This witness on cross-examination testified: "Q. When the boy drove up there were about twenty or thirty people around? A. Yes. Q. And there was a big fire on the truck? A. Certainly, yes. Q. Did you see the fire? A. Wasn't I there? Q. And these twenty or thirty people were standing there watching the fire? A. Yes; they were standing around looking on. Q. And the boy drove up past the truck? A. No; he stopped just short on the other side. Yes, he passed the truck, but the truck wasn't burning yet. The explosion hadn't taken place yet. Q. But the truck was burning when he passed by in his automobile? Q. Yes; why, of course, it was burning then, but the explosion had not taken place. Q. How high were the flames? (The Court): That is, when the boy passed. A. Oh, quite low. The flames were quite low, say, about a yard from the ground, when the boy passed by, but after the explosion, then they burned well. Q. And the boy passed by and stopped his automobile? A. At the bridge. Q. Then he walked back to look at the fire? A. Yes, he ran back. Q. How long was he standing near the truck before the explosion took place? A. Why, about fifteen or twenty minutes. Q. He was standing there about fifteen or twenty minutes? A. Yes, he was standing there about fifteen or twenty minutes on the cement—on the gangway. Q. The truck was burning all the time? A. Yes, sir."

In the recent case of *Texas Co. v. Wash., B. & A. R. Co.,* 147 Md. 167, in passing upon a prayer withdrawing the case from the consideration of the jury on the ground of contributory negligence, the court, speaking through Judge Walsh, said: "Assuming, without deciding the point, that

Miller was, as the appellant contends, either expressly or impliedly invited by the defendant to come to the freight shed, and then to go personally and get the freight consigned to his employer, the measure of the defendant's' responsibility is thus stated in 20 *R. C. L.* 55, par. 51: 'The authorities are entirely agreed upon the proposition that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils.' There is, however, a corresponding duty to use due care imposed on the person invited, as is shown by the following quotation from the succeeding paragraph in 20 *R. C. L.*: 'The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * * And hence there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant.' Both of these statements from *Ruling Case Law* were quoted with approval by Chief Judge Boyd in *Fulton Building Co. v. Stichel,* 135 Md. 542, and they are fully sustained by both reason and authority. See *Thompson on Negligence,* vol. 1, page 871; *Cooley on Torts* (3d Ed.), vol. 2, pp. 1258-1259; 29 *Cyc.* 453; *The Gladiolus,* 21 Fed. 418; *Dwyer, Adm'x, etc., v. National Steamship Co.,* 4 Fed. 493; *Caniff v. Blanchard Nav. Co.,* 66 Mich. 638; *Dubrule v. Benjamin F. Smith Co.* (R. I.), 68 Atl. Rep. 544, and *Flynn v. Central R. R. Co.,* 142 N. Y. 439. There is a confusion of language in some of the cases,.

so that at first glance it is not always clear whether the decision rests on the ground of lack of negligence on the part of the defendant, or lack of due care on the part of the plaintiff, but a closer examination shows that, whatever language may be used, the real underlying principle of the decisions is the contributory negligence of the plaintiff. And this contributory negligence arises from the failure of the plaintiff to use due care to avoid dangers which he knows from past experience exist on the premises to which he has been invited, or which he should know exist because of his knowledge of the character and kind of premises to which he has been invited, or because the dangers are so obvious that any ordinarily prudent man would see them and guard against them."

The facts, to which the law laid down by Judge Walsh was applied, were that Miller, an employee of the appellant in that case, went to the freight warehouse of the appellee for the purpose of getting freight belonging to his employer. He found that the warehouse had much freight piled in it, and an empty barrel supporting a leaning iron radiator. He moved the barrel, causing the radiator to fall and seriously injure him. The witness testified that he did not see that the radiator was supported by the barrel. The effect of our decision in that case was to recognize and apply the doctrine that if a person, even though invited by the owner of the premises, does not exercises such care and prudence to avoid an obvious peril as would be exercised by ordinarily prudent men, he cannot recover for resulting injury. In other words, the law declares a man negligent who comes in contact with an open and obvious danger, if he does not use such care as an ordinarily prudent and intelligent man would use under similar circumstances. In such a case the law regards the injured party as the author of his own injury. This is true even though the injured party be invited upon the premises by the owner or occupant thereof. Under any and all circumstances the law places upon a man the duty of exercising reasonable care for his own protection. In

holding one to this responsibility, the law requires of an individual little more than is naturally practiced under the instinct of self-preservation; for what an ordinarily prudent and careful man would do, under a given set of circumstances, is, after all, controlled by the instinctive urge to protect himself from harm, and this he would do without regard to legal requirements.

Applying this rule of common sense as well as of law, the question is, Would an ordinarily prudent man, of average intelligence, knowing the mechanism of an automobile truck and the explosive nature of gasoline, and seeing the truck on fire, have approached so near as to be injured by an explosion of the gasoline tank? We think not. This the plaintiff did, and in doing so, such distinct, prominent, and decisive act was negligence, which precludes recovery by him for the injury. The evidence shows that the plaintiff was an operator of automobiles and automobile trucks; that he was of mature age; and that he approached the overturned truck at a time when the peril of an explosion was obvious and visible, the overturned truck having then been burning for about fifteen minutes. Such conduct might be fitly described as reckless, but certainly it is such conduct as an ordinarily prudent man would not be guilty of, and leaves no room for difference in the minds of ordinarily intelligent and prudent men as to its imprudence. One cannot read and analyze the evidence in this case without becoming convinced that the plaintiff, passing an overturned burning automobile truck, seeing a crowd gathered around, stopped and went back to join the crowd with an utter disregard of the perfectly apparent probability of a resulting explosion. He either did not heed the warning of danger which his senses must have conveyed, or else determined to assume the risk incident to his position. In either event he cannot recover.

*Judgment affirmed, with costs to the appellee.*