# PINEHURST COMPANY *v.* MORGAN WALLACE PHELPS.

[No. 6, April Term, 1932.]

*Decided May 20th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, and SLOAN, JJ.

*William L. Marbury* and *Jesse Slingluff, Jr.,* with whom were *L. Wethered Barroll* and *Fendall Marbury* on the brief, for the appellant.

*J. Purdon Wright,* with whom was *W. Frank Every,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On July 20th, 1930, the appellee, Morgan Wallace Phelps, then a boy sixteen years old, who sues by his mother and next friend, together with a friend, John W. Peach, and four rela-

tions, was at a resort located on the Chesapeake Bay near Baltimore, known as Pinehurst-on-the-Bay, owned and operated by the Pinehurst Company, appellant. They were friends of Mr. Ernest Robinson, the president of the company, and it was from his house that the party went to the beach. The boy changed clothes at Mr. Robinson's, and he, a cousin, and Mr. Peach repaired to the beach to swim. The place was described by Peach as "a public resort; that is you can go there—any person can go there and bathe and engage the facilities of the place, and we were there as guests of these people, as I have stated. There are bath houses you can obtain, also a beach to bathe, rafts, and there is this wharf that the accident occurred on, which is very close to the bath houses, and it projects out into the water, I should judge about thirty-five to forty feet, and there are steps that lead down into the water on this wharf, and they are, I should judge, about fifteen feet from the land side of the wharf, and we were sitting and standing at the time of the accident about five feet from the end of the wharf—the end out in the water. We were out about fifteen to twenty feet beyond the steps."

The boy, Morgan Phelps, testified: "After I had changed I walked down to the pier where Mr. Peach and the rest of our family were. I went out to pretty near the end of the pier. (Some witnesses said about five feet from the end.) Johnny, Mr. Peach, and my cousin, Miss Gladys (Johnston), were about to go in, so I went in with them. I said to Johnny, 'Johnny, let's go in.' He said, 'All right, you go first.' I looked and saw the distance was clear so I wouldn't hit anybody, and jumped in. I hit the bottom; I came up and couldn't move." The fact is he was paralyzed; he was taken to a hospital, where he remained until January 5th, 1931, and since then has been a patient at the Children's Hospital School. There is no controversy about the nature and extent of the boy's injuries, nor is there any variation or contradiction in the evidence. With the facts undisputed, the only questions submitted to this court are the legal sufficiency of the evidence to support a verdict, and the contribu-

tory negligence of the plaintiff, appellee, raised by the refusal of the appellant's first and second prayers.

When an injury is sustained by any one, unless unavoidable or unforeseen, it is usually somebody's fault, and, when an action is brought by the one injured, the inquiry is first directed toward the one charged with the negligent act or omission, to ascertain whether the injury was sustained as a result of the violation of some duty which the defendant owed the plaintiff. It may be that the defendant was at fault, but that even then no injury would have been sustained but for the negligent act of the plaintiff, which would not entitle the latter to recover; or it may be that the act causing the injury was the defendant's negligence, and this case falls in one (may be two) of the three situations mentioned.

In this case the proprietor of a pleasure resort and bathing beach is sued by its invitee or patron for injuries sustained by the latter on account of its negligence and failure to exercise due care "in failing to post notice of the dangerous condition of said bathing beach as warnings to persons using the same of the latent dangers which existed by reason of the shallowness of the water," so that the offense charged is one of omission. "In such an action as this, the basis of the right of a plaintiff to recover rests in some act or omission which constitutes negligence, and the main inquiry is whether the facts as testified to made out such a *prima facie* case as to give rise to a presumption of negligence, or to warrant a jury in drawing a conclusion of negligence." *Agricultural & Mechanical Association v. Gray,* 118 Md. 600, 605, 85 A. 291, 293.

The duty of one who invites customers and guests to a resort, and equally applicable to any other business or amusement places, as expressed in *Albert v. State, use of Ryan,* 66 Md. 326, 338, 7 A. 697, 700, is: "He who solicits and invites the public to his resorts must have them in a reasonably safe condition, and not in a condition to risk the lives and limbs of his visitors." *Kann v. Meyer,* 88 Md. 541, 41 A. 1065; *New Theatre Co. v. Hartlove,* 123 Md. 78, 90 A. 990; *Carlin v. Krout,* 142 Md. 140, 120 A. 232; *Texas Co. v.*

*Washington, B. & A. Elec. R. Co.,* 147 Md. 167, 173, 127 A. 752; *Carlin v. Smith,* 148 Md. 524, 130 A. 340.

The appellee, in his brief, says that "there are apparently no adjudicated cases in Maryland with facts similar to the facts in the instant case"; but he assumes in his declaration that the danger to bathers existed, and that it was the duty of the appellant to post notices as warnings of the "latent dangers which existed," and relies on the rule that "the owner is liable to one who comes upon the property by his invitation, express or implied, and is injured by undisclosed and hazardous conditions of which the owner was aware, and against which he did not use due care to afford protection," (*Kalus v. Bass,* 122 Md. 467, 469, 470, 89 A. 731, 732), and as expressed in *Texas Co. v. Washington, B. & A. Elec. R. Co.,* 147 Md. 167, 173, 127 A. 752, 754, "that an owner or occupant of lands or buildings, who directly or by implication invites or induces others to go thereon or therein, owes to such persons a duty to have his premises in a reasonably safe condition, and to give warning of latent or concealed perils," adopted from 20 *R. C. L.* 55. As must appear from the versions of the rule as stated, the duty of a proprietor toward a patron or invitee is clear, but the decision always depends on the application of the rule to the facts of the particular case, in which differences do occur.

The facts in this case are not disputed, but the application of the rule to the facts depends upon the assumption that the pier or wharf mentioned in the declaration was maintained and used as a structure from which bathers were expected to dive into the waters of the Chesapeake; that it was a dangerous place from which to dive on account of the shallowness of the water; and that "it was the duty of the owner to have posted notices on the pier warning its patrons of the danger." In order to ascertain whether conditions existed for which the proprietor should be held responsible, recourse must be had to the record. According to the record the water at the place where the appellee dived was three and a half feet deep. In diving he struck the sandy bottom and thereby was seriously injured. From appearances he could not tell anything

about the depth of the water, as he testified that you could not see the bottom in over six inches of salt water, as this was. So far as appearances then were concerned, he could not tell whether it was a safe place to dive, or not. So far as the record shows, the only other person who ever dived into the water at this place before the time charged was the boy himself and that was, according to his testimony, two weeks before. He did not say what the depth of the water was then, whether at that time the tide was in or out, and we are not informed as to the tide when the accident occurred, and yet it may have had everything to do with the different results on the two occasions testified to. There is nothing to show the height of the pier or wharf above the water at the time of the injury. Two pictures of the pier or wharf are in evidence, and these photographs show nothing to indicate that it was to be used for diving; no diving board on it or projecting from it. Near the end, about the place where the appellee dived, is a ladder fastened against the side of the pier, and on the opposite side, two steps lower than the floor of the pier, is a platform from which some steps—with no evidence as to how many—project down into the water. Nowhere in the record is there any evidence of the uses and purposes of the pier, except such use of it as the appellee made on the two occasions to which he testified, one of which was attended with such unfortunate results.

The only conclusion to which we can come is that the appellee, according to this record, knew of the conditions there existing and he assumed the risk of the consequences. From his experience at the same place two weeks before and from observation, the risk to be run by diving from the pier was as apparent to the appellee as to any one. "A risk, while obvious, may not be so imminently dangerous that a prudent man would necessarily avoid it, yet if it shall be freely encountered it will in general be held to be so far assumed that no recovery for consequent injury is possible." *Bohlen's Studies in Torts,* 446. In *Texas Co. v. Washington, B. & A. Elec. R. Co.,* 147 Md. 167, 173, 127 A. 752, and in *Yockel v. Gerstadt,* 154 Md. 188, 192, 140 A. 40, 41, adopted from

20 *R. C. L.* 56, it is said: "The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * * And hence there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." The text just stated is illustrated by the facts in this case. The boy had frequently visited the place, had been there two weeks before, when he dived from the same place as on the occasion of his unforunate visit. Whether the water was at the same or a different level we do not know, but he was old enough to know and appreciate the conditions then existing. How can it be said that what the plaintiff had so shortly before found to be a safe place to swim, without any evidence as to changed conditions, had become unsafe and dangerous. In the opinion of this court the evidence does not show primary negligence in the defendant (appellant), and its first prayer should have been granted, and the judgment will be reversed.

*Judgment reversed, with costs.*