GEORGE YANIGER *v.* CALVERT BLDG. & CON-
STRUCTION CO.

[No. 16, April Term, 1944.]

*Decided May 4, 1944.*

286

The cause was argued before MARBURY, C.J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Roszel C. Thomsen,* with whom was *Paul L. Cordish* on the brief for the appellant.

*Jesse Slingluff, Jr.,* for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is a suit for damages brought on behalf of the appellant because of the appellee's alleged negligence in failing to provide safeguards at a window in its office building through which the appellant fell and sustained severe injuries. A demurrer to the amended declaration was sustained, without leave to further amend, and it is from this ruling that the plaintiff has appealed.

The suit is based upon the following allegations of fact: The defendant on August 2, 1940, was the owner of the office building known as the "Equitable Building" in Baltimore City and invited and permitted the general public to enter it to visit its tenants and for other purposes. On the afternoon of the day mentioned, which was a very hot day, the plaintiff entered this building by way of the bridge which connects the seventh floor of the Equitable Building with the Calvert Building to visit a tenant, and eventually came into the hallway on the seventh floor in order to take an elevator down to the ground floor. There are four elevator shafts, two on each side of the window hereinafter described, but only

one pair of buttons or signals to stop the elevator, which buttons are located within a few inches of said window. The plaintiff pushed the "down" button, but the elevator was long in coming.   Immediately beside the button was a tall window, which opened to a height of five feet ten inches from the floor, the sill of which was only two feet two inches above the floor, just above the knee, and well below the center of gravity of a man of normal height, as the plaintiff is.   The window was wide open, and this window, as well as the corresponding windows on each floor of the building, was customarily kept open by the defendant during the summer, but had no bar or other guard across it to prevent persons from falling out of it.   No warning of the unusually low and dangerous window was posted or othewise given.   The plaintiff saw that the window was there, but his attention was not drawn to the height of the window sill from the floor because he was required to, and did, focus his attention on the location of the elevator buttons as he approached the elevators.   After pressing the button, the plaintiff turned toward the window for a breath of air and as he did so he became dizzy and overcome by the heat and the exertion of walking about the streets, and fell toward the window.   He fell out of said window on to a sheet metal air duct six or seven floors below, and was seriously and permanently injured.   These injuries, the declaration further alleges, "were caused by the negligence of the defendant, its agents, servants and employees, in that it permitted a dangerously low window in the public hallway to be open beside the elevator buttons and shafts without a bar or guard, as aforesaid, knowing that the public generally, including persons who were weak and infirm, or persons who were or might become faint, had to come to the window in order to signal the elevators, without any negligence on the part of the plaintiff contributing thereto."

The amended declaration also contained the following allegation:   "The feasibility of such protection (placing a bar or other guard across the window) is shown by the

fact that the defendant has since caused a bar to be placed across all such windows of the building at a proper height, to wit, fifteen inches above the sill, to prevent people from falling out of the window." This allegation was stricken out by the Court on motion of the defendant, and the appellant has raised the point on this appeal that the ruling was erroneous. However, in the view we take of the case, it is not necessary to pass upon this incidental point for the reason that, even with this allegation included in it, the amended declaration is demurrable.

The liability of the owner of a public building to invitees has been defined by this Court in numerous cases and the law governing it is well settled. The owner is not an insurer of such persons but owes them the duty, only, to exercise ordinary care to render the premises reasonably safe and to give warning of latent or concealed perils. When the facts alleged show that the danger is as obvious to an invitee as it is to the owner, the latter is not liable for injuries sustained in failing to heed the danger. *Pinehurst Co. v. Phelps,* 163 Md. 68, 160 A. 736; *Morgenstern v. Sheer,* 145 Md. 208, 217, 125 A. 790; *Fulton Building Co. v. Stichel,* 135 Md. 542, 545, 109 A. 434; *Yockel v. Gerstadt,* 154 Md. 188, 140 A. 40; *Texas Co. v. Washington B. & A. Co.,* 147 Md. 167, 173, 127 A. 752.

In the cases above cited this Court has adopted the Statement of the rule as thus expressed in 20 R.C.L., Negligence, 55: "The authorities are entirely agreed upon the proposition that an owner or occupant of land or buildings who directly or by implication invites or induces others to go thereon or therein, owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils." See also: *Cooley on Torts,* 4th Ed., Sec. 440; 45 C. J., *Negligence,* Secs. 232, 237.

That there is a corresponding duty imposed on the invitee to use due care in avoiding an obvious danger is shown by the following quotation from the succeeding

paragraph in 20 R.C.L., and quoted with approval in *Fulton Building Co. v. Sitchel,* supra; *Yockel v. Gerstadt,* supra; *Pinehurst Co. v. Phelps,* supra; *Texas Co. v. Washington B. & A.,* supra, and *Gordon v. Maryland State Fair,* 174 Md. 466, 199 A. 519, supra: "The mere ownership of land or buildings does not render one liable for injuries sustained by persons entering thereon or therein; the owner is not an insurer of such persons even though he has invited them to enter, nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality or the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant, and not known to the person injured, that a recovery is permitted. * * * And hence there is no liability for injuries from dangers that are obvious, or as well known to the persons injured as to the owner or occupant."

The general rule embodying the above principle of law is thus stated in *Restatement of Torts,* Am. Law Inst., Vol. 2, Sec. 343: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereof if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein; and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (1) to make the condition reasonably safe, or (2) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility

In the application of the principle expressed by the authorities above cited, it is to be noted that the com-

parative knowledge of the parties is the test of liability,— that is to say, the knowledge of the defendant as opposed to the knowledge of the person injured. "Liability is established when it is shown that the peril, being of the defendant's creation, was known to the defendant but not to the person injured; and no liability is predicable of the injury when it appears that the injured person's knowledge of the danger surpassed or equalled that of the defendant." 20 R.C.L. 14, 15.

In the case at bar the amended declaration points to the "unusually low and dangerous window" as the particular danger or perilous instrumentality to which appellant was exposed by the appellee's alleged negligence. The substance of his contention is, according to the narr, that the appellee was under the legal obligation to safeguard the window in question against practically all contingencies that might arise, even when an invitee lost consciousness or became dizzy while standing so close to the exposed window that he fell through it.

However, this would impose too high a degree of care upon the owner for it would, in effect, make it an insurer of the safety of invitees, and this the authorities universally hold is not required. The extent of its liability, as hereinbefore pointed out, is to have its premises in a reasonably safe condition for the protection of invitees,—themselves exercising due care,—and to give warning of latent or concealed perils. The law does not go so far as to charge the owner of a building with the duty of making provision against a happening which he could not reasonably be expected to foresee.

In this connection, it is entirely clear from the facts alleged that the unfortunate mishap would not have occurred if the appellant had remained in the space ordinarily occupied by persons having occasion to use the elevators and where he was perfectly safe as long as he remained in a normal condition. He admits that he saw the window, but states that his attention was not drawn to the height of the window sill from the floor "because he was required to, and did, focus his attention on the

location of the elevator button as he approached the elevators." However, this statement loses its legal effectiveness when confronted with his previous allegation that after he had pressed the button "the elevator was long in coming." Then, even if not before, while waiting there he had full opportunity to observe the window and every physical condition pertaining to it,—its height, width, size of opening and depth of ledge,—and its relation to the space in the hallway provided for persons desiring to use the elevators. There was nothing whatever that was hidden or latent about any danger or risk to which he might have been exposed, or of which the appellee could be charged with having superior knowledge; nor does the amended narr state any facts from which the appellee would have reason to believe that an invitee in the building would not plainly see or "discover the condition or realize the risk involved therein." *Restatement of Torts, supra,* subsec. "(b)".

The authority on which the appellant seems to principally rely in support of his theory of this case is *Recreation Corp. v. Zimmerman,* 172 Md. 309, 191 A. 233. However, the facts of that case and the application of the law thereto not only fail to support that theory but, rather, serve to emphasize the very point which defeats it. That is to say, in the Zimmerman case, the plaintiff, while descending steps attached to a stand of seats intended for spectators at defendant's bowling alley, was injured owing to the fact that the drop to one of the steps was twice the usual space and that he failed to notice this. The defendant offered prayers for a directed verdict because (1) of the lack of legally sufficient evidence to prove negligence; (2) contributory negligence and (3) assumption of risk by plaintiff. In affirming the judgment refusing these prayers, and on the point of comparative knowledge of danger, this court, in an opinion by Chief Judge Bond, stated at page 312, of 172 Md., at page 234 of 191 A.: "Suffice it to say that toward guests for whom provision is made there is a duty on a proprietor to take precautions against their

injury on the accommodations provided, from a danger known to the proprietor, but which as he should realize, a visitor exercising ordinary care might not perceive, and by which he might be caught unawares. * * * And if it might reasonably have been inferred that there was a danger of catching a careful spectator at the steps unawares, as the plaintiff says he was caught, and that the proprietor exercising ordinary care should have realized the fact yet failed to take precautions against the accident, the proprietor might have been found to have failed in the duty imposed."

It is to be noted from this quotation that the point on which the decision of that case turned was the existence of a possible danger by which the plaintiff might have been "caught unawares." Moreover, as pointed out by the Court, the proprietor's duty was to protect invitees from a danger known to him but which the latter in the exercise of ordinary care "might not perceive."

In the case at bar there is a total absence of any facts showing that the appellant was, or could have been, "caught unawares", or that there was a danger which he might not have perceived even though exercising ordinary care. Nor did the appellant find himself in any such situation as the plaintiff in the case of *Morgenstern v. Scheer,* supra [145 Md. 208, 125 A. 792], where the plaintiff testified that his fall down an unguarded elevator shaft was because he found himself "all of a sudden" in front of the shaft.

In the instant case the appellee had provided a hallway for business visitors or invitees which is not alleged to have been ill-lighted or inadequate in any way, and where every physical condition about the window was in full view of the appellant for the entire time he was approaching the elevator and standing beside the shaft at this particular window. These conditions clearly differentiate the instant case from the four cited in appellant's brief on this point, namely: *Recreation, etc. Corp. v. Zimmerman,* 172 Md. 309, 191 A. 233; *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 A. 282; *Fulton*

*Building Co. v. Sticher,* 135 Md. 542, 109 A. 434, and *McFarlane v. Niagara Falls,* 247 N.Y. 340, 160 N.E. 391. This leaves the amended declaration without any support at all in law as a cause of action against the appellee, so that the ruling of the Court below in sustaining the demurrer to it must be affirmed.

*Judgment affirmed, with costs.*